# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| BELINDA C. McCULLOUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-cv-00037-TWP-DML |
| | ) |
| MISTER "P" EXPRESS, INC., | ) |
| EDDIE FARRIS, JIM BOHANAN, | ) |
| ALLAN PARNELL, CYNTHIA COLLIER, | ) |
| JIMMY PARNELL, TERRY BURKHEAD, | ) |
| LEAH DAVIS, TOM MOORE, | ) |
| SCOTT SPOONMORE, and RICK BARTON, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTIONS TO DISMISS

This matter is before the Court on Motions to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Eddie Farris, Jim Bohanan, Allan Parnell, Cynthia Collier, Jimmy Parnell, Leah Davis, Tom Moore, Scott Spoonmore, and Rick Barton (Filing No. 24) and Terry Burkhead (Filing No. 28) (collectively the "Individual Defendants"). For the following reasons, the Court **GRANTS** the Individual Defendants' Motions to Dismiss.

## I. LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, the complaint must include "enough facts to state a

claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

On May 7, 2014, Plaintiff Belinda C. McCullough ("Ms. McCullough") filed a Complaint against her employer, Mister "P" Express, Inc. ("Mister "P" Express"), and some of her supervisors and co-workers, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Indiana Civil Rights Law, Indiana Code § 22-9-1 ("Civil Rights Law"), and Indiana Code § 35-45-2-2 for workplace sexual harassment, discrimination, retaliation, and wrongful termination ([Filing No. 1](Filing No. 1)).

Ms. McCullough had three separate stints as an employee of Mister "P" Express, spanning almost ten years. She worked as an over-the-road truck driver from September 2003 to March 2008, September 2008 to December 2010, and September 2011 to July 2013. During her first two periods of employment with Mister "P" Express, Ms. McCullough had a positive experience, enjoying good working relationships, being commended for excellent performance, and receiving pay increases. Unfortunately, her third and final stint with Mister "P" Express was much different.

Beginning in September 2011, Ms. McCullough suffered frequent sexual harassment and discrimination at Mister "P" Express. Defendant Eddie Farris ("Mr. Farris"), one of Ms. McCullough's supervisors, would communicate with and refer to Ms. McCullough using sexual names on a daily basis and would often ask for sexual favors. Mr. Farris frequently objectified Ms. McCullough with comments and questions about her breasts and naked body. He asked Ms. McCullough for nude photographs of her body, told sexual jokes and innuendo, and sent pictures

2

of his exposed genitalia to her via text message. Mr. Farris also requested that Ms. McCullough engage in sexual acts with another female employee, take photographs, and share the photographs with him.

Ms. McCullough communicated to Mr. Farris that his conduct and comments were not welcome, and she asked that he stop sexually harassing her and making inappropriate comments. Instead of refraining from the sexual harassment, Mr. Farris persisted. On April 6, 2012, while Ms. McCullough was on the road making a delivery to California, she received a text message from Mr. Farris, who was her supervising dispatcher for the delivery. The message from Mr. Farris to Ms. McCullough was a picture of his erect penis. This picture caused Ms. McCullough emotional distress.

On April 10, 2012, immediately after returning from the delivery to California, Ms. McCullough reported the incident and showed the picture to Mr. Farris's supervisor, Defendant Rick Barton ("Mr. Barton"). She also told Mr. Barton about the many other incidents of sexual harassment and intimidation. Mr. Barton assured her that he would take care of the problem. Mr. Barton reported the harassment to the other Individual Defendants, who were supervisors or managers at Mister "P" Express.

On April 12, 2012, Defendant Allan Parnell ("Mr. Parnell"), the owner of Mister "P" Express, asked Ms. McCullough to meet with him. They discussed the April 6, 2012 incident, and Mr. Parnell expressed his displeasure with Mr. Farris to Ms. McCullough. He explained that Mr. Farris was employed by Mister "P" Express because Mr. Farris's father was an old friend of Mr. Parnell. He then asked Ms. McCullough to sign a statement that explained Mr. Farris's conduct had been swiftly and severely handled and proper disciplinary actions had been taken. Ms.

3

McCullough and Mr. Parnell signed the statement. Ms. McCullough believed that disciplinary action had been or soon would be taken against Mr. Farris.

Instead, Mr. Parnell and Mister "P" Express did not impose any disciplinary action on Mr. Farris. He was not suspended. He was not fired. He was not required to undergo remedial training. He was not demoted from his supervisory position. Mister "P" Express did nothing to ensure that sexual harassment and discrimination would not continue to occur. Mr. Parnell and Mister "P" Express did nothing to change the hostile work environment for Ms. McCullough.

Soon after Ms. McCullough complained about the sexual harassment and discrimination, she experienced retaliation by the Individual Defendants and Mister "P" Express. She received reduced pay. She was reassigned to less desirable, lower paying deliveries. She was given less deliveries to complete. She was accused of a poor work ethic, inferior work, and excessive medical absences. She was asked to falsify paperwork and was threatened to be terminated without cause.

After Ms. McCullough complained about the sexual harassment and discrimination, and because management did nothing to address it and instead retaliated against her, Ms. McCullough filed a charge against Mister "P" Express with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 5, 2012. Ms. McCullough was fired in July 2013, by Mister "P" Express. On February 4, 2014, the EEOC issued a "Notice of Right to Sue" letter to Ms. McCullough, and thereafter, she initiated this lawsuit. In this action, Ms. McCullough has asserted claims of workplace sexual harassment, discrimination, retaliation, and wrongful termination against each of the Individual Defendants and Mister "P" Express. In her Complaint, Ms. McCullough requests injunctive relief, compensatory damages, punitive damages, and attorney fees and costs ([Filing No. 1 at 13](Filing No. 1 at 13)).

## III. DISCUSSION

In their Motions to Dismiss, the Individual Defendants explain that Ms. McCullough's claims under Title VII and the Civil Rights Law must be dismissed because there is no personal liability under Title VII for individual co-workers or supervisors, and Ms. McCullough failed to exhaust administrative remedies prior to filing the Civil Rights Law claims in this Court.

Ms. McCullough asserts in her response to the Motions to Dismiss that she brought her claims under Title VII and the Civil Rights Law "against her former employers Mister P, Allen Parnell and Cynthia Collier." (Filing No. 42 at 5.) "Against the remaining individual Defendants, McCullough alleges damages pursuant to Indiana Code 35-45-2-2, common law negligence and implied causes of action." (Filing No. 42 at 5.)

**1.  Claims Under Title VII and the Indiana Civil Rights Law**

In her response brief, Ms. McCullough concedes that the Individual Defendants are not personally liable under Title VII and the Civil Rights Law. Indeed, supervisors and co-workers cannot be held liable in their individual capacity under Title VII because they do not fit the definition of "employer." *See Passananti v. Cook County*, 689 F.3d 655, 677 (7th Cir. 2012); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *United States EEOC v. AIC Sec. Investigations*, 55 F.3d 1276, 1279–80 (7th Cir. 1995); *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 2012 U.S. Dist. LEXIS 178438, at *4–6 (S.D. Ind. Dec. 18, 2012). "[W]hile Title VII's definition of 'employer' does include the term 'agent,' Congress intended only for employers to be liable for their agent's actions under the traditional *respondeat superior* doctrine, not for agents to be personally liable." *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998).

After Ms. McCullough makes this concession, she explains that "Plaintiff does not argue that Allan Parnell and Cynthia Collier as individual actors committing discrimination are liable

under Title VII of the Civil Rights Act or Indiana Civil Rights Law. Instead Plaintiff argues that Parnell and Collier are the alter-ego of Mister P's." (Filing No. 42 at 7.) Ms. McCullough concludes, "As such, they are vicariously liable for the actions of their employees just the same as Defendant Mister P itself." (Filing No. 42 at 7.)

But the Seventh Circuit does not allow individual liability for Title VII violations under the "alter ego" theory.

> We disregard the presumption of shareholder protection from individual liability only in limited circumstances. *See Van Dorn*, 753 F.2d at 569-70. To overcome this presumption, a party must show, in addition to the interrelation of a corporation and its shareholders, that the protection must be disregarded in order to prevent fraud or the promotion of injustice. *See id.* at 570. The problem with the "alter ego" theory is that it seeks to impose liability upon shareholders without a showing of fraud or injustice. *See AIC Sec.*, 55 F.3d at 1282 n.11 (suggesting that we would not adopt "alter ego" theory because shareholder is already potentially liable through veil piercing). Our rejection of the "alter ego" theory is further supported by Congress' aversion to individual liability under Title VII. *See, e.g., id.* at 1279-82.

*Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001). Additionally, Ms. McCullough has not pled allegations that would support a theory of piercing the corporate veil. Therefore, Defendants Allan Parnell and Cynthia Collier cannot be personally liable for any Title VII violations of Mister "P" Express under the theories of piercing the corporate veil or being an "alter ego."

Because Title VII does not provide a cause of action against supervisors or co-workers in their individual capacity and the Seventh Circuit rejects the alter ego theory, Ms. McCullough's Title VII claims asserted against each of the Individual Defendants must be dismissed.

The Individual Defendants maintain that Ms. McCullough's claims under the Civil Rights Law also must be dismissed because she failed to exhaust administrative remedies before filing the Civil Rights Law claims in this Court. Specifically, the Individual Defendants note that they did not enter into a written agreement with Ms. McCullough, consenting to have the claims "decided in a civil action . . . in a court of law." Indiana Code § 22-9-1-16. The Individual

Defendants assert that, with the lack of an agreed election to a civil action, Ms. McCullough's Civil Rights Law claims must be dismissed.

In opposition to the Motions to Dismiss, Ms. McCullough asserts that she satisfied the requirement of exhausting administrative remedies by timely filing a charge with the EEOC, receiving a "Notice of Right to Sue" letter from the EEOC, and timely filing this action. She claims that when she submitted her charge to the EEOC, this submission also served as a submission to the Indiana Civil Rights Commission. On this last point, Ms. McCullough is correct. But under the Civil Rights Law, to be able to file a civil action in a court of law, the complainant must do more than just submit a charge with the EEOC or the Indiana Civil Rights Commission. This has been explained in many other cases in both state and federal courts.

> The Indiana Civil Rights Law creates the Indiana Civil Rights Commission (ICRC) to investigate and adjudicate discrimination claims. While the Civil Rights Law expressly authorizes civil suits by private litigants, it also sets out procedural prerequisites to bringing suit. Typically, a plaintiff must file a complaint with the ICRC, which then conducts an investigation and determines whether there is probable cause to believe that the defendant illegally discriminated against the plaintiff. Pursuant to a work-sharing agreement between the ICRC and the EEOC, a complaint filed with the EEOC constitutes a complaint filed with the ICRC.
>
> If the ICRC finds probable cause that discrimination occurred, the parties either proceed to an administrative hearing, or, if both parties agree in writing, the plaintiff can institute a civil suit in state court. Thus, unless the complainant convinces the defendant to consent to litigation, the case proceeds through the administrative hearing process and is decided by an administrative law judge.

*Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 915–16 (C.D. Ill. 2010) (internal citations and quotation marks omitted). *See also Hague v. Thompson Distrib. Co.*, 2005 U.S. Dist. LEXIS 7509, at *22 (S.D. Ind. Feb. 9, 2005) (Civil Rights Law claims "may only proceed to court pursuant to an appeal of the final Commission decision, Ind. Code § 22-9-8-1, or through a written agreement between the parties, entered into prior to any Commission hearings. Ind. Code § 22-9-1-6. There is no unilateral right to pursue claims through litigation and the Plaintiffs did not seek

to have the Commission review their claims after receiving notification that the EEOC would not be reviewing the claims further."); *Vanderploeg v. Franklin Fire Dep't*, 2000 U.S. Dist. LEXIS 6403, at *8–9 (S.D. Ind. Apr. 5, 2000) ("The administrative process of the Indiana Civil Rights Law can be bypassed, but only in one narrow circumstance: if both the party making the complaint and the party responding to it agree in writing to have the matter decided in a court of law. Otherwise, there is no private right of action."); *M.C. Welding & Machining Co. v. Kotwa*, 845 N.E.2d 188, 192 n.3 (Ind. Ct. App. 2006) ("[B]y filing his charge with the EEOC, [plaintiff] also filed his charge with the ICRC. The EEOC eventually closed its file . . . . When the EEOC closed its file, it appears that [plaintiff's] complaint should have been investigated and processed by the ICRC as described above. [Plaintiff] contends that the ICRC declined to process his claim but presents no support for this assertion.").

Ms. McCullough has not presented any evidence and has not pled in her Complaint that she entered into a written agreement with the Individual Defendants to proceed with her Civil Rights Law claims in a civil action in a court of law. The Individual Defendants specifically deny that any such agreement was made among the parties. Therefore, Ms. McCullough's Civil Rights Law claims must be dismissed for failure to state a claim upon which relief can be granted.

Ms. McCullough also raises the doctrine of preemption. She asserts that her state law claims under the Civil Rights Law survive dismissal because of this doctrine. She alleges that the Civil Rights Law is in direct conflict with Title VII and is an obstacle to accomplishing and executing federal law under Title VII. Therefore, she explains, she filed her charge with the EEOC, not with the Indiana Civil Rights Commission, and she "exhausted all her necessary administrative remedies prior to filing this civil suit. She was not required to make any additional filing with the ICRC because that procedure usurps Indiana Civil Rights Law through preemption." (Filing No.

42 at 17.) This is not a correct application or analysis of the doctrine of preemption, nor does preemption apply in this case.

**2.      Civil Claims Under Indiana Criminal Code § 35-45-2-2**

Ms. McCullough explains that "[a]gainst the remaining individual Defendants, McCullough alleges damages pursuant to Indiana Code 35-45-2-2 . . . ." (Filing No. 42 at 5.)

"Indiana's courts have been hesitant to recognize implied rights of action under Indiana statutory law." *Pearson v. Indiana High Sch. Ath. Ass'n*, 2000 U.S. Dist. LEXIS 11913, at *11 (S.D. Ind. Feb. 8, 2000). "[W]hen determining whether there exists a private cause of action for a violation of statutory law, Indiana courts begin by examining legislative intent." *Id.* at *12 (citing *Right Reason Publications v. Silva*, 691 N.E.2d 1347, 1352 (Ind. Ct. App. 1998) ("The determination of whether a civil cause of action exists for the violation of a criminal statute begins with an examination of legislative intent.")). Where the legislature makes the violation of a statute a misdemeanor or felony and imposes a criminal penalty, it is likely that the legislature intended that the statute would not be enforced through a private cause of action. *See Silva*, 691 N.E.2d at 1352; *see also Coons v. Kaiser*, 567 N.E.2d 851, 852 (Ind. Ct. App. 1991) (where the legislature "includes a specific enforcement provision, an additional private cause of action based upon the statute cannot be judicially inferred").

The Indiana General Assembly has provided a mechanism for victims of particular crimes to seek damages through a private cause of action. That mechanism is the Indiana Crime Victims Relief Act, Indiana Code § 34-24-3. Victims of crime may bring a private cause of action for damages if they have suffered a loss from a violation of Indiana Code §§ 35-43, 35-42-3-3, 35-42-3-4, or 35-45-9, or from adoption deception. The Indiana General Assembly did not include violation of Indiana Code § 35-45-2-2, the harassment statute, as a crime for which a victim may

9

seek damages in a private cause of action. Nothing in the harassment statute itself implies any legislative intent to create a private cause of action under the statute. Ms. McCullough's arguments are well taken, however, the Court finds no basis to imply a private cause of action. Therefore, Ms. McCullough cannot maintain her claim against the Individual Defendants under Indiana Code § 35-45-2-2, and that statutory claim is dismissed.

### 3. Common Law Negligence

In her response to the Motions to Dismiss, Ms. McCullough asserts that she brought a common law negligence claim against the Individual Defendants. The allegations in Ms. McCullough's Complaint do not give the Individual Defendants fair notice that a claim for common law negligence was brought against them. The Complaint unequivocally states, "This is an injunctive relief and damages action pursuant to 42 U.S.C. §2000, *et seq.*, Title VII of the Civil Rights Act of 1964 and supplemental Indiana Codes 22-9-1-1 *et seq.* and 35-45-2-2 against Defendants for sexual harassment, sexual discrimination, retaliation and conspiracy to harass, discriminate and retaliate against Plaintiff." (Filing No. 1.) The Complaint pled four separate counts: hostile work environment harassment, discrimination, retaliatory conduct and termination, and punitive damages. While the Court looks beyond the labels and titles affixed to the Complaint, there is nothing to indicate that this is a negligence case. The action was brought pursuant to particular statutes, and the Complaint pled factual allegations to support those statutory claims. There is no common law negligence claim pending in this matter.

### 4. Implied Causes of Action

In opposing the Motions to Dismiss, Ms. McCullough asserts that she has implied causes of action against the Individual Defendants for harassment and discrimination. She relies on *Cort v. Ash*, 422 U.S. 66 (1975) in support of her assertion and lays out the four-prong test established

in that decision to determine whether an implied cause of action exists. But Ms. McCullough fails to recognize that the *Cort* test is no longer utilized to establish an implied cause of action. *See Cenzon-Decarlo v. Mount Sinai Hosp.*, 2010 U.S. Dist. LEXIS 3208, at *5–8 (E.D.N.Y. Jan. 15, 2010) (citing *Thompson v. Thompson*, 484 U.S. 174, 189 (1988); *Transamerica Mortgage Advisors. Inc. v. Lewis*, 444 U.S. 11 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979)); *see also Ryan v. Illinois*, 1996 U.S. Dist. LEXIS 5160, at *4–5 (N.D. Ill. Apr. 17, 1996). Instead, courts look to legislative intent to determine whether a private right and a private remedy were intended. *Id.* If the statute shows that Congress did not intend to create both a private right and a private remedy, then "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

The legislative intent is clear under Title VII: there is no private right and no private remedy against individuals. A plaintiff is provided with a private cause of action against her employer. When rejecting the alter ego theory, the Seventh Circuit noted "Congress' aversion to individual liability under Title VII." *Worth*, 276 F.3d at 262. There is no implied cause of action against the Individual Defendants under Title VII.

As already noted, "Indiana's courts have been hesitant to recognize implied rights of action under Indiana statutory law." *Pearson*, 2000 U.S. Dist. LEXIS 11913, at *11. The Indiana Civil Rights Law does not create a private cause of action; rather, it establishes an administrative process to address violations of the Indiana Civil Rights Law. *Hague*, 2005 U.S. Dist. LEXIS 7509, at *22; *Sturdivant v. Ind. Prot. & Advocacy Servs.*, 2003 U.S. Dist. LEXIS 22210, at *25 (S.D. Ind. Sept. 26, 2003); *Vanderploeg*, 2000 U.S. Dist. LEXIS 6403, at *7–9; *M.C. Welding & Machining Co*, 845 N.E.2d at 192 n.3. As explained above, a claim under the Civil Rights Law may be

brought in court only by agreement of both parties. *Id*. The legislative intent derived from the Civil Rights Law is that the Indiana General Assembly was not creating any private causes of action. Thus, this Court will not imply a cause of action against the Individual Defendants under the Civil Rights Law.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Individual Defendants' Motions to Dismiss ([Filing No. 24](Filing No. 24), [Filing No. 28](Filing No. 28)) are **GRANTED** with prejudice. This Order does not apply to the claims asserted against Defendant Mister "P" Express, Inc., and those claims remain pending in this litigation. Accordingly, no final judgment will issue at this time.

**SO ORDERED.**

Date: 02/02/2015

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Stuart E. Alexander, III
STUART ALEXANDER PLLC
salexander@louisvilleemploymentattorney.com

Ruby D. Fenton
TILFORD DOBBINS ALEXANDER, PLLC
rfenton@tilfordlaw.com

Ayala Golding
TILFORD DOBBINS ALEXANDER, PLLC
agolding@tilfordlaw.com

James C. Puszczewicz
ZZZ LEGAL
jim@zzzlegal.com