## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| BELINDA C. McCULLOUGH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:14-cv-00037-TWP-DML |
| MISTER "P" EXPRESS, INC., | ) ) ) |
| Defendant. | ) |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Mister "P" Express, Inc. ("MPE") (Filing No. 60). While employed by MPE, Plaintiff Belinda C. McCullough ("Ms. McCullough") experienced sexual harassment and sex discrimination in the workplace. After she complained of the harassment and discrimination, she started experiencing retaliation at work. She filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") and later was terminated from her employment with MPE. Ms. McCullough then initiated this lawsuit. MPE moved for summary judgment, asserting that Ms. McCullough was a willing participant in the sexual conduct in the workplace and that she was not retaliated against after she complained. For the following reasons, the Court **DENIES** MPE's Motion for Summary Judgment.

### I.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d

487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## II. BACKGROUND

MPE is a commercial truck hauling company located in Jeffersonville, Indiana. Ms. McCullough had three separate stints as an employee of MPE, spanning almost ten years. She worked as an over-the-road truck driver from September 2003 to March 2008, September 2008 to December 2010, and September 2011 to July 2013. During her first two periods of employment with MPE, Ms. McCullough had a positive experience, enjoying good working relationships, being commended for excellent performance, and receiving pay increases. Her third and final stint with MPE was much different.

Beginning in September 2011, Ms. McCullough suffered frequent sexual harassment and discrimination at MPE. Eddie Farris ("Mr. Farris"), a dispatch manager at MPE and one of Ms.

McCullough's indirect managers, communicated with and referred to her using sexual names on a frequent basis and often asked for sexual favors. Once or twice a week, Ms. McCullough would have to turn in paperwork and pick up new paperwork at the corporate office where Mr. Farris worked. Mr. Farris would make sexual comments or ask for sexual favors from Ms. McCullough almost every time she came to the corporate office. Mr. Farris frequently objectified Ms. McCullough with comments and questions about her breasts and naked body. He asked Ms. McCullough for nude photographs of her body and told sexual jokes and innuendo. Mr. Farris also requested that Ms. McCullough engage in sexual acts with another female employee, take photographs, and share the photographs with him.

Ms. McCullough communicated to Mr. Farris that his conduct and comments were not welcome, and she asked that he stop sexually harassing her and making inappropriate comments. Instead of refraining from the sexual harassment, Mr. Farris persisted. On April 6, 2012, while Ms. McCullough was out on the road making a delivery to California, she received a text message from Mr. Farris, who was her supervising dispatcher for the delivery. The message from Mr. Farris to Ms. McCullough was a picture of his erect penis. This picture caused Ms. McCullough emotional distress.

On April 10, 2012, immediately after returning from the delivery to California, Ms. McCullough reported the incident and showed the picture to Mr. Farris's supervisor, Rick Barton ("Mr. Barton"). She also told Mr. Barton about the many other incidents of sexual harassment and intimidation. Mr. Barton assured her that he would take care of the problem. Mr. Barton reported the harassment to other supervisors and managers at MPE.

On April 12, 2012, Allan Parnell ("Mr. Parnell"), the owner and CEO of MPE, asked Ms. McCullough to meet with him alone in his office. They discussed the April 6, 2012 incident, and

3

Mr. Parnell expressed his displeasure with Mr. Farris to Ms. McCullough. He explained that Mr. Farris was employed by MPE because Mr. Farris's father was an old friend of Mr. Parnell. Mr. Parnell made Ms. McCullough feel that she would be safe at MPE and promised that she would be given a pay raise and better delivery runs. He asked Ms. McCullough to sign a statement that explained Mr. Farris's conduct had been swiftly and severely handled and proper disciplinary actions had been taken. Ms. McCullough and Mr. Parnell signed the statement. Ms. McCullough believed that disciplinary action had been or soon would be taken against Mr. Farris.

However, Mr. Farris was not suspended, he was not fired, and he was not required to undergo remedial training. Mr. Farris was not demoted from his supervisory position. Mr. Parnell and MPE did not impose any disciplinary action on Mr. Farris; MPE simply issued an "employee documentation" to Mr. Farris, requiring him to stop his sexual conduct toward Ms. McCullough ([Filing No. 60-10 at 2](#)). MPE asserts that it disciplined Mr. Farris and points to an affidavit of Jim Bohannan, senior vice president of MPE; however, that evidence does not support this assertion ([Filing No. 60-9](#)). MPE took no other action to ensure that sexual harassment and discrimination would not continue to occur. Mr. Parnell and MPE did nothing to change the hostile work environment for Ms. McCullough.

Soon after Ms. McCullough complained about the sexual harassment and discrimination, she experienced retaliation by her supervisors, her managers, and MPE. She was reassigned to less desirable, lower paying deliveries. She was given less deliveries to complete. She received reduced pay. She was accused of a poor work ethic, inferior work, and excessive medical absences. She was asked to falsify paperwork concerning medical leave from work and was threatened to be terminated if she did not provide this paperwork.

After Ms. McCullough complained about the sexual harassment and discrimination, and because management did not address it and instead retaliated against her, Ms. McCullough filed a charge against MPE with the EEOC on October 5, 2012. Approximately five months later, on March 19, 2013, Ms. McCullough sent an email to three members of management, requesting a safer, more reliable truck to run deliveries. She blind-copied Mr. Parnell on her email. Less than four hours later, she was copied (most likely unintentionally) on Mr. Parnell's response email to the other members of management, wherein he simply replied, "She has a set!!"[1] (Filing No. 62-3 at 2.) From his response, Ms. McCullough realized that she had no protection or allies at MPE.

This was not the only incident of harassment by Mr. Parnell toward Ms. McCullough. Ms. McCullough testified that, during her first stint of employment at MPE, she and Mr. Parnell were "standing outside talking about business and company, and he had looked me up and down and said 'Um, Um, Um, girl you are looking good.' And on another occasion he went, 'Damn your husband is a lucky man,' as he was looking me up and down." (Filing No. 62-1 at 17.) Because Mr. Parnell is the owner and CEO of MPE, Ms. McCullough felt like there was no one that she could report to about the incidents.

About nine months after filing her EEOC charge, in July 2013, Ms. McCullough was fired by MPE. On February 4, 2014, the EEOC issued a "Notice of Right to Sue" letter to Ms. McCullough. On May 7, 2014, Ms. McCullough initiated this lawsuit by filing a Complaint against MPE and some of her supervisors and co-workers (the "Individual Defendants"), including Mr. Parnell and Mr. Farris. She asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Indiana Civil Rights Law, Indiana Code § 22-9-1 ("Civil

---

[1] Using the Spanish term "conjones" Ms. McCullough interpreted this comment to mean a set of testicles or balls. (Filing No. 62-1 at 15). See http://www.merriam-webster.com/dictionary/cojones.

Rights Law"), and Indiana Code § 35-45-2-2 for workplace sexual harassment, discrimination, retaliation, and wrongful termination (Filing No. 1).

The Individual Defendants filed motions to dismiss, arguing that Title VII claims cannot be brought against the Individual Defendants and Ms. McCullough had failed to exhaust her administrative remedies to bring claims under the Civil Rights Law. The Court granted the Individual Defendants' motions to dismiss, thereby leaving MPE as the sole defendant (Filing No. 58).[2]

### III.  DISCUSSION

In its Motion for Summary Judgment, MPE explains that Mr. Farris is a "city run dispatcher," not Ms. McCullough's supervisor, and that it took appropriate corrective action, so MPE cannot be liable under Title VII for Mr. Farris's actions. MPE further argues that Ms. McCullough was a willing participant in the sexual conduct and communications between her and Mr. Farris, so her Title VII claims must fail. MPE also argues that the sexual conduct and communications from Mr. Farris ceased after Ms. McCullough complained. MPE asserts that Ms. McCullough's poor work performance, not her complaints of harassment, impacted her employment status. Finally, MPE argues that Ms. McCullough actually resigned from her employment; she was not terminated in retaliation for her complaints.

"Title VII prohibits the creation of a hostile work environment. In order to prevail on such a claim, a plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014) (citation and quotation marks omitted). The Seventh Circuit has explained that:

---

[2] The Court notes that Ms. McCullough's claims under the Civil Rights Law and Indiana Code § 35-45-2-2 are not properly before the Court for the reasons articulated in the Order on Motions to Dismiss (Filing No. 58 at 6–10). Therefore, Ms. McCullough's claims against MPE for workplace sexual harassment, discrimination, retaliation, and wrongful termination are analyzed under Title VII as alleged in the Complaint.

6

> To avoid summary judgment on a hostile work environment claim, a plaintiff must provide sufficient evidence to create a genuine issue of material fact as to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) her gender . . . must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability.

*Id.* The Supreme Court discussed at length this last element of a hostile work environment claim.

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (U.S. 2013).

Both MPE and Ms. McCullough have provided evidence that shows there was a subjectively and objectively offensive work environment at MPE. The frequent sexual conduct and communications among the management and employees at MPE meets this element. The evidence also shows that Ms. McCullough's harassment resulted from her gender, being the target of men's sexual comments and advances because she is a woman. The evidence demonstrates that the conduct was severe and pervasive with many, frequent sexually-explicit communications, requests, and propositions.

Concerning the fourth element—a basis for employer liability—MPE asserts that Mr. Farris was not Ms. McCullough's supervisor so it cannot be liable because it was not negligent in handling the complaint about sexual harassment. The evidence shows that after Ms. McCullough complained about Mr. Farris's conduct that Mr. Farris no longer sexually harassed her. However, the evidence also can be viewed as MPE being negligent in controlling working conditions because it never fired Mr. Farris or moved him to a different office, and Ms. McCullough still had to encounter Mr. Farris while at work, which caused her emotional distress. Furthermore, MPE does

not address Ms. McCullough's assertions that Mr. Parnell, the owner and CEO, also sexually harassed Ms. McCullough both before and after she complained to him about Mr. Farris's conduct. As to Mr. Parnell, Ms. McCullough does not need to show that MPE was negligent in controlling working conditions to establish a basis for employer liability because Mr. Parnell was the owner and CEO of the company and certainly a supervisor of Ms. McCullough. Ms. McCullough has presented evidence to show a genuine issue of material fact regarding her hostile work environment claim to preclude summary judgment.

This same evidence supports a sexual harassment claim under the elements that (1) the harassing conduct is because of a person's sex, (2) is unwelcome (though not necessarily forced against their will), and (3) results in a loss of employment benefits or is severe or pervasive to the extent that it alters the terms or conditions of the employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–68 (1986).

Regarding Ms. McCullough's retaliation and wrongful termination claim, she may show retaliation by using either the direct method or the indirect, burden-shifting method. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). Under the direct method of proof, using either direct or circumstantial evidence, Ms. McCullough must show "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). Ms. McCullough can prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "could convince a reasonable jury that [s]he was the victim of unlawful retaliation." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013). Under the indirect method of proof, Ms. McCullough must show that "(1) she engaged in a statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse

employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005); *Tomanovich*, 457 F.3d at 663.

Both MPE and Ms. McCullough have presented evidence that shows Ms. McCullough engaged in statutorily protected activity by reporting sexual harassment to Mr. Barton and then to Mr. Parnell. *See Piel v. Kokomo Auto World, Inc.*, 2008 U.S. Dist. LEXIS 92995, at *12 (S.D. Ind. Nov. 14, 2008) (reporting sexual harassment is statutorily protected activity). The parties then factually dispute whether Ms. McCullough suffered adverse employment actions after she complained of the harassment. MPE asserts that Ms. McCullough continued working at MPE for nearly fifteen months after complaining. MPE explains that Ms. McCullough's "solo pay" was increased about six months after her complaint. It further asserts that Ms. McCullough's work performance diminished.

Ms. McCullough paints a different picture of what happened after she complained of the sexual harassment. Between the time she complained about Mr. Farris and her termination, Ms. McCullough was heavily scrutinized about her log books and other matters, her safety concerns and other requests for reliable equipment that affected her productivity were not being addressed, and she began receiving less freight and lucrative runs. She was treated less favorably than she had been treated prior to complaining, and she was treated less favorably than many other drivers who were male and had less experience and success within the company. Ms. McCullough explains that any decrease in her work performance was a result of MPE not providing reliable and safe equipment, giving her less profitable deliveries, and creating a hostile work environment for her. After Ms. McCullough had complained of the harassment and filed the EEOC charge, in response to Ms. McCullough's safety and equipment request, Mr. Parnell, the company owner and

CEO, responded to upper management, "She has a set," thereby furthering the harassment and retaliation.

MPE and Ms. McCullough also dispute whether Ms. McCullough was terminated or resigned her employment with MPE. MPE asserts that Ms. McCullough could have taken a medical leave of absence if she would have returned FMLA paperwork, but because she did not return FMLA paperwork and did not immediately return to work, MPE considered her absence an indication of resigning from her employment. MPE points to email exchanges between MPE management and Ms. McCullough to support these assertions (Filing No. 60-12). However, these same emails support Ms. McCullough's explanation that Jim Bohannan, MPE's senior vice president, had given her permission to take an extended period of time off work to attend to her sister who was sick. Ms. McCullough asserts that MPE terminated her employment. The designated evidence and the factual disputes between the parties preclude entry of summary judgment on Ms. McCullough's retaliation and wrongful termination claim.

## IV. CONCLUSION

For the foregoing reasons, MPE's Motion for Summary Judgment (Filing No. 60) is **DENIED**. Ms. McCullough's claims for workplace sexual harassment, discrimination, retaliation, and wrongful termination under Title VII against MPE **remain pending for trial in this litigation.**

SO ORDERED.

Date: 9/16/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Stuart E. Alexander, III
STUART ALEXANDER PLLC
salexander@louisvilleemploymentattorney.com

James C. Puszczewicz
ZZZ LEGAL
jim@zzzlegal.com